JUSTICE TRIEWEILER
dissenting.
I dissent from the majority’s conclusion that the Workers’ Compensation Act provides Michael Blythe with his exclusive remedy for the injury he sustained during the course of his employment with the Community Medical Center.
Blythe’s complaint in this case was dismissed for failure to state a claim pursuant to Rule 12(b)(6), M.R.Civ.P. We have previously held that:
A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A *477 motion to dismiss under Rule 12(b)(6), M.R.Civ.R, has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. [Citations omitted.]
Willson v. Taylor (1981), 194 Mont. 123, 126, 634 P.2d 1180, 1182.
With that standard in mind, we assume the following facts to be true:
Michael Blythe was employed as a respiratory therapist for the Community Medical Center in Missoula during January 1989. Prior to that time, the Medical Center had been having financial difficulties, and therefore, the head of the respiratory care department accepted free arterial blood gas kits, knowing that they were defective. Patients, however, were charged the regular price for this equipment.
Although the head of the respiratory care department knew the kits were defective, he did not advise all of the therapists who would use those kits during the course of their employment. Instead, the kits were placed with other equipment inventory for use.
The danger to which employees were exposed from the defective kits was the danger that the needle would come loose and cause a needle-stick injury to the employee. As a result, the disease for which patients were being treated could be transmitted to the health care provider using the kit. Hospital administrators knew that a needle-stick injury resulting from use of the defective kits could transmit diseases, such as AIDS and hepatitis B to its employees.
At about 6 a.m. on Sunday morning, January 29,1989, Blythe was using a defective arterial blood gas kit on a patient who suffered staph and strep infection, pneumonia, herpes, the AIDS virus, and hepatitis B. Because of the defect in the kit, he was stuck by the needle and exposed to contamination from the patient’s blood-born diseases. He was subsequently advised by an emergency room physician that “well, you’ve got five or six years before you come down with AIDS.” As a result of his injury and the mental strain from concern for his future health, Blythe has suffered severe and totally disabling mental problems.
Blythe alleged, and therefore, we assume it to be true, that when his superiors provided him with defective blood gas kits they acted intentionally and with actual malice. In other words, he alleged that the hospital intentionally provided its employees with defective blood gas kits, knowing that they were exposed to severe and terminal harm *478 in the exact manner that Blythe alleges he was harmed, but disregarding that potential harm because of the economic benefit it hoped to realize from doing so.
The majority discusses its prior decisions, language from a treatise, and a selected statutory definition of “malice” to support its conclusion. However, the rule which excepts intentional conduct on the part of an employer from the exclusivity of the Workers’ Compensation Act is statutory and is neither as restrictive nor demanding as this Court’s prior decisions. It simply states that:
If an employee receives an injury while performing the duties of his employment and the injury or injuries so received by the employee are caused by the intentional and malicious act or omission of a servant or employee of his employer, then the employee ... shall, in addition to the right to receive compensation under the Workers’ Compensation Act, have a right to prosecute any cause of action he may have for damages against the servants or employees of his employer causing the injury.
Section 39-71-413, MCA.
There is no question, based on the allegations in the complaint, that Blythe’s supervisor acted intentionally when he purchased defective arterial blood gas kits from the hospital’s supplier. The question is whether, based on the allegations in the complaint, his act was also malicious.
Stripping an employer from the protection provided by the Workers’ Compensation Act based on intentional conduct is a punitive remedy intended to deter employers from intentionally harming their employees. Therefore, it is most logical to apply the statutory definition of malice found at § 27-1-221(2), MCA, Montana’s punitive damage statute. There, the Legislature has stated that:
A defendant is guilty of actual malice if he has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
(a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff;
(b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.
By that definition of malice, Blythe’s complaint satisfies all of the elements necessary to overcome defendants’ motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P.
*479 The majority relies on the definition of malice found at § 1-1-204(3), MCA, but fails to distinguish its previous decision in Millers Mutual Insurance Company v. Strainer (1983), 204 Mont. 162, 663 P.2d 338, where this Court applied the term “malice” in a workers’ compensation context much more expansively than it does here. In that case, we held that:
Respondent argues that for one to act maliciously one must necessarily intend the consequences of the act. Respondent relies on Boyer v. KLoepfer (1976), 170 Mont. 472, 554 P.2d 1116, wherein this Court equated malice with an intent to injure. However, the general definition of malice is more expansive. In Cashin v. Northern Pac. R. Co. (1934), 96 Mont. 92,28 P.2d 862, this Court defined malice as “a wish to vex, annoy, or injure another person, or an intent to do a wrongful act. (Emphasis supplied). The Montana Supreme Court has also implied malice where the intentional acts of a defendant were committed without justifiable excuse, privilege or defense. Poeppel v. Fisher (1977), 175 Mont. 136, 572 P.2d 912. We hold that malice can be found where acts are intentional though the consequences are not.
In summaiy, we hold that section 39-71-413, of the Workers’ Compensation Act, permits the filing of a third-party action where acts of an employee are intentional irrespective of whether the results of that act were intended.
Strainer, 663 P.2d at 341-42.
Our holding in Strainer suggests that for purposes of construing the term “malice,” as it is used in § 39-71-413, MCA, the statutory definition provided for in § 27-1-221(2), MCA, is much more appropriate than the restrictive language found at § 1-1-204(3), MCA, which was specifically rejected in the Strainer decision.
The majority also relies on its prior decisions in Great Western Sugar Company v. District Court (1980), 188 Mont. 1, 610 P.2d 717, and Noonan v. Spring Creek Forest Products, Inc. (1985), 216 Mont. 221, 700 P.2d 623, for the principle that an intentional act which removes an employer from the protection of the exclusivity clause of the Workers’ Compensation Act requires “intentional harm” and an act directed at the specific employee, or a class of employees to which he or she belongs. However, those requirements clearly go beyond the plain terms of § 39-71-413, MCA, and are inconsistent with this Court’s prior decision in Strainer. While it is true that since 1987 the *480 Court is not required to construe the Workers’ Compensation Act liberally in favor of the employee, there certainly is no requirement that it be construed liberally in favor of the employer. That should be especially true where the issue is compensation for an employee injured by an allegedly intentional and malicious act of his employer. Yet, that is the effect of our decisions in Great Western Sugar, Noonan, and the majority opinion in this case.
Therefore, I conclude that the decisions relied on by the majority have misconstrued the plain terms of the Workers’ Compensation Act and have judicially legislated requirements which are not in the Act. For these reasons, I would not follow those prior decisions.
I conclude that the acts alleged in Blythe’s complaint were both “intentional” and “malicious” as defined by statute in Montana and our prior case law. Therefore, I would reverse the judgment of the District Court and remand this case to the District Court for further proceedings to determine whether Blythe’s allegations are true.
JUSTICES HARRISON and HUNT join in the foregoing dissent.